FILED

1998 OCT 13 PM 1:58

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DANA RAY,            }
                     }
    Plaintiff        }
                     }       CIVIL ACTION NO.
    vs.              }
                     }       97-AR-2649-S
ABC AUTO PARTS, ET AL., }
                     }
    Defendants       }

ENTERED

OCT 13 1998

## MEMORANDUM OPINION

Presently before the court are three motions: Motion for Summary Judgment filed on August 4, 1998 by defendants ABC Auto Parts, ("ABC") and Sidney Clements ("Clements"); Motion to Strike filed on August 24, 1998 by plaintiff Dana Ray ("Ray") (deemed a motion in limine); and Ray's Motion to Strike Evidentiary Materials filed on September 14, 1998 (also deemed a motion in limine).

## BACKGROUND

ABC is a corporation doing business in Jefferson County, Alabama. Clements is the president and the primary, if not the sole, stockholder of ABC. From the evidence presented, it is clear that Clements had a continuous physical and predominant supervisory presence at ABC.

From January through August of 1997, Ray performed data entry and counter-service for ABC. She was paid in cash with no withholdings and was never formally entered into ABC's payroll system. Ray alleges that during that time, Clements sexually harassed her both verbally and physically. Specifically, Ray contends that Clements propositioned her on several

1

46

occasions, inquired about her sex life with her husband, repeatedly and intentionally touched and squeezed her breasts, and pressed himself up against her on more than one occasion. Clements categorically denies all allegations.

By her amended complaint of March 17, 1998 Ray accuses ABC and Clements of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, violation of the Fair Labor Standards Act, and assault and battery. Defendants' motion for summary judgment asserts that there is an absence of any genuine issue of material fact with regard both to the Title VII and the state law claim.[1] Defendants contend that (1)Ray was not an employee of either defendant; (2) ABC is not an employer within the meaning of Title VII; (3) Ray has sustained no damages; (4) there was no *quid pro quo* proposition as alleged;(5) Ray suffered no adverse employment action; and (6) Clements' alleged acts do not rise to the level required for assault and battery. Contentions (1) and (2) relate to the applicability of Title VII. Contentions (3), (4), and (5) suggest an inability to make out a *prima facie* case of sexual harassment. Contention (6) challenges plaintiff's state law claim.

By motion filed August 24, plaintiff has moved to strike the evidence filed by defendants in support of their motion for summary judgment. Specifically, plaintiff objects to references to her sexual history, to her criminal record, to her drug problem, to portions of plaintiff's deposition testimony, and to affidavits submitted by Clements and another employee of ABC.

On September 14, 1998, Ray moved to strike evidentiary materials

---

[1] Defendants' motion does not address the alleged violation of the Fair Labor Standards Act.

2

filed on the date that defendants' reply brief was due to be received. The court will address this, the most recent motion, first.

## DISCUSSION

### I. MOTION TO STRIKE EVIDENTIARY MATERIALS

In her motion of September 14, Ray argues that allowing defendants to submit evidentiary materials on September 4 violates F.R.Civ.P. 56 and the order of this court entered on August 25, 1998. Plaintiff's primary objection appears to be her perception that she is precluded from responding to such evidence. This court finds plaintiff's arguments an insufficient basis for striking the evidence at issue, although much of it will not be admissible at trial and eventually will not survive plaintiff's motion construed as a motion in limine.

### II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. *Applicability of Title VII*

1. Plaintiff's Status as Employee

Defendants contend that Ray is not their "employee" within the meaning of Title VII. Title VII defines employee as "any individual employed by an employer." 42 U.S.C. § 2000e(f) (1994). Though the statutory definition contains no further elaboration, the Eleventh Circuit has adopted a method, known as the "hybrid test" to determine whether an individual is an "employee" or merely a contractor. See Cobb v. Sun Papers, Inc., 673 F.2d 337, 341 (11th Cir. 1982), *cert. denied*, 459 U.S. 874, 103 S.Ct. 163; Garcia v. Copenhaven, Bell, & Assoc., 104 F.3d 1256, 1266 (11th Cir. 1997); Fronduti v. Trinity Indus., 928 F. Supp. 1107, 1111 (N.D. Ala. 1996). The hybrid test considers the

3

economic realities of the situation (whether the individual is dependent upon the business to which they render service) in light of common law principles of agency and the right of the employer to control the individual. Cobb, 673 F.2d at 341.

Applying the hybrid test to the facts of this case, the following evidence suggests that plaintiff was an employee of ABC, if not of Clements, within the meaning of "employee" in Title VII:

1. Plaintiff's deposition testimony indicates that she was not employed elsewhere during her tenure with defendants. Viewing the economic realities of the situation, it is apparent that plaintiff was dependent upon ABC. See id. at 340.

2. Plaintiff's tasks at data entry and at the counter position were usually performed under the direction of a supervisor. See id. at 340-41 (giving direction regarding details of work suggests employee status).

3. The tasks required no special training or skill set. See id. (suggesting that occupation requiring general skills likely to be employee).

4. Defendants furnished the equipment used in plaintiff's tasks as well as the place of work. See id. (if tools, job site furnished by employer, suggests employee status).

5. According to her deposition testimony, plaintiff worked at ABC for at least seven months. See id. at 340 (length of service is factor).

6. Plaintiff's deposition testimony indicates that she was paid on a time basis rather than per job. (Page 129 of Ray's deposition indicates she was promised a "day's wages" to accompany Clements to Huntsville). Deposition testimony of Wayne Weldon also indicates that plaintiff punched in and out on a time clock. Compare id. at 341 (wages paid by job, suggesting non-employee status) with Fronduti, 928 F. Supp. at 1112 (wages paid on time basis suggests employee status).

7. The work plaintiff performed -- data entry and counter service at an auto parts store -- was an essential part of ABC's business. See Cobb, 673 F.2d at 340.

4

The following evidence may provide a basis for a fact-finder to conclude that plaintiff was not an "employee" of ABC or of Clements:

1. Plaintiff's deposition testimony and affidavits supplied by Clements and Jane Grissom ("Grissom") show that Ray was not paid by paycheck, nor were any taxes ever withheld from her pay. Defendants rely on this evidence, apparently exclusively, in contending that Ray was not an employee. See Cobb, 673 F.2d at 340-41; Fronduti, 928 F. Supp. at 1112 (failure to withhold taxes,, Social Security, or unemployment compensation suggests non-employee).

2. No evidence suggests that plaintiff accumulated vacation time or sick leave. See id.; Fronduti, 928 F. Supp. at 1112 (non-receipt of employee benefits suggests non-employee).

3. Though there is some dispute about the manner in which the relationship between plaintiff and ABC was terminated and whether or not plaintiff provided an explanation at the time, the parties agree that plaintiff terminated the relationship and did not provide notice. See id. (whether relationship terminated unilaterally, without notice and/or explanation is factor).

The final factor discussed in Cobb is the intent of the parties. 673 F.2d at 340. The evidence relating to this factor is, at this point, unclear. In his affidavit, Clements characterizes plaintiff as a "contract laborer" who "could be here today and gone tomorrow . . . Dana Ray was not considered an employee - just temporary help." Yet in that same affidavit, Clements states, with unintended candor, that plaintiff "was an okay **employee**" (emphasis added). Additionally, plaintiff's deposition testimony indicates that there may have been some contemplation of an employer-employee relationship. On page 107, Ray says that she understood that defendants would not tax her during the first part of the year, then would tax her heavily in the second part "to make sure that my taxes were leveled out at the end of the year."

This court finds that plaintiff's status as an employee remains a

5

disputed issue of material fact. Based on the current state of the evidence, it is possible, perhaps even probable, that plaintiff will ultimately prevail in proving her status as an employee of ABC. Summary judgment with respect to this issue is inappropriate as to ABC but appropriate as to Clements, as will more clearly appear hereinafter.

2. ABC's Status as Employer

Title VII defines "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b) (1994). In 1997, the Supreme Court of the United States further elaborated on the definition of "employer" by stating "the ultimate touchstone under § 2000e(b) is whether an employer has **employment relationships** with [the requisite number of employees]" (emphasis added). Walters v. Metropolitan Educational Enterprises, Inc., 519 U.S. 202, 117 S.Ct. 660, 666 (1997). While the Walters Court found the appearance of an individual on the employer's payroll convincing evidence that an employment relationship did exist, the opinion does not suggest that the **absence** of an employee's name from payroll dispositively indicates that such a relationship did **not** exist. See id.; EEOC v. Newmark & Co. Real Estate, Inc., 1997 WL 324066, *3 (S.D.N.Y.); Burdett v. Abrasive Eng'g & Tech., 989 F. Supp. 1107, 1110-11 (D.Kan. 1997); see also Kemether v. Pennsylvania Interscholastic Athletic Ass'n, 1998 WL 464921, *26 (E.D.Pa.). In determining the number of employees defendants had during the relevant time period, this court must therefore count all persons with whom defendants had an employment relationship for twenty or more consecutive weeks, not just those

6

employees who appear on the payroll.

Defendants contend that ABC never had fifteen employees during the relevant time period. Defendants submit two affidavits by Grissom counting a maximum of seven payroll employees and two or three "idle laborers;" one affidavit by Clements counting five or six payroll employees and one or two "contract laborers;" and ABC's payroll records for most of 1997. The "Quarterly Contribution and Wage Reports" supplied for much of 1997 indicate that eleven was the greatest number of payroll employees ABC had during the period for which information was supplied. None of ABC's payroll records for the previous calendar year were submitted.

To support her contention that ABC did, in fact, have fifteen employees, plaintiff submits her affidavit listing sixteen people who worked with plaintiff from January 1997 through August of 1997, a time period exceeding twenty consecutive weeks. Plaintiff states that she remembers more people who worked during her employment, but she cannot recall their names.

In Burdett v. Abrasive Eng'g & Tech., the United States District Court for Kansas faced a situation with remarkably similar facts. See 989 F. Supp. 1107 (D.Kan. 1997). Defendant in a Title VII case denied having the necessary number of employees and supported the contention with affidavits, payroll summaries, and the very same report - "Quarterly Report and Contribution Form" - supplied by defendants in this case. Id. at 1110. Plaintiff relied on the affidavits of two former employees who recalled several employees whose names do not appear on defendants' payroll summary. Id. In determining whether defendants could prevail on summary judgment with respect to this issue, the court explained:

7

> Defendants' evidence . . . may ultimately carry the
> day. Nevertheless, the Court must view the evidence in
> the light most favorable to plaintiff. Because plaintiff
> has supported her jurisdictional allegation with affidavits,
> she has established a genuine issue of material fact.

Id. at 1111. The court went on to deny the defendants' motion to dismiss, which it had treated as a motion for summary judgment.

Similarly, by supporting her contentions regarding the number of employees employed by ABC with an affidavit, plaintiff has preserved a genuine issue of material fact. Summary judgment on this point is not appropriate as to ABC. There is nothing, however, to suggest that Clements, personally as distinct from ABC, his wholly owned corporation, himself had fifteen or more employees. Therefore, his liability, if any, cannot be premised upon his status as "employer" under Title VII. He cannot be liable to Ray under Title VII.

### B. *Prima Facie Case of Sexual Harassment*

For some unexplained reason, Ray claims *quid pro quo* sexual harassment instead of garden variety sexual harassment. The Eleventh Circuit has explained that in order to make out a *prima facie* case of *quid pro quo* sexual harassment, a plaintiff must demonstrate (1) that the employee belongs to a protected group; (2) that the employee was subject to unwelcome harassment; (3) that the harassment complained of was based on sex; (4) that the unwelcome behavior was intended to affect and did affect tangible aspects of the employee's compensation, or terms, conditions, or privileges of employment. Virgo v. Riveria Beach Assoc., Ltd., 30 F.3d 1350, 1361 (11th Cir. 1994). In this case, Ray clearly satisfies two of the four elements. She has presented sufficient

8

evidence to create a genuine issue as to whether she was an employee of ABC, and she is clearly a member of a protected group, thereby satisfying the first element of a *prima facie* case. If Ray can show that the acts complained of did occur, the harassment was clearly based on sex, thus satisfying the third element of a *prima facie* case. Defendants' arguments attack plaintiff's ability to demonstrate the remaining elements of a *prima facie* case of *quid pro quo* harassment, as well as a general allegation that she has sustained no damages of which she should be heard to complain.

1. Existence of a *Quid Pro Quo* Relationship

Defendants contend that plaintiff has shown no evidence of a *quid pro quo*. Why are the parties fighting over this? The court finds the issue academic, although the parties seem to think it a serious issue. If, as is obvious, Clements is the CEO and owner of ABC, any of his actions which violate Title VII *are* the actions of ABC. Clements is not somewhere lower than the top in the corporate chain of command. Defendants appear to read narrowly the second element of a *prima facie* case. The Eleventh Circuit requires plaintiff to demonstrate that she was subject to "unwelcome sexual harassment." Virgo, 30 F.3d at 1361. When defendants demand for proof of unwelcome *quid pro quo* sexual harassment they miss the point, but if they are right, they are wrong.

If the court must address the propriety of the qualification defendants have imposed on the Eleventh Circuit's statement of a *prima facie* case, plaintiff has introduced evidence sufficient to satisfy even defendants' narrow reading of "sexual harassment." Plaintiff has submitted her deposition testimony, in which she describes a conversation

9

with Clements in which he tells her that she must "do favors for him." Plaintiff's deposition testimony clearly indicates that she interpreted that remark, taken in context and in light of Clements' behavior on other occasions, to mean that the performance of sexual favors was necessary to keep her job. Plaintiff also submits deposition testimony from Terry Cromer, a witness to Clements' allegedly offensive acts. Cromer describes an occasion on which Clements' asked plaintiff to remain after hours, that plaintiff was uncomfortable remaining after hours alone with Clements, but that plaintiff clearly felt that she would lose her job if she did not stay.

While this evidence may not provide proof sufficient to convince a jury that a *quid pro quo* did indeed exist, it clearly indicates a genuine issue of material fact as to whether the acceptance of the harassment was an express or implied condition to the receipt of a job benefit. See Farley v. American Cast Iron Pipe Co., 115 F.3d 1548, 1552 (11th Cir. 1997). This whole discussion of whether the unwelcome approaches Ray complains of constitute *quid pro quo* harassment is a waste of time. Whether or not it was *quid pro quo*, ir it occurred as Ray describes it, it creates liability by ABC under simple *respondeat superior*.

2. Adverse Employment Action Taken Against Plaintiff

Defendants also challenge plaintiff's ability to satisfy the fourth required element of a *prima facie* case which requires plaintiff to demonstrate that the employee's reaction to the unwelcome behavior affected tangible aspects of the employee's compensation, or terms, conditions, or privileges of employment. Defendants contend that because plaintiff "lost no money as a result of the alleged activities of the

10

defendants," she did not suffer adverse employment action. Defendants argue that plaintiff left her job voluntarily. In support of this argument, defendants submit the affidavit of Clements, stating that plaintiff "gave no warning, nor did she tell [Clements] that she was quitting. She just walked out."

In support of her contention that she did suffer adverse employment action, plaintiff submits her deposition testimony in which she states that Clements treated her somewhat differently after she refused to accompany him to Huntsville, a request plaintiff interpreted as an attempted sexual rendez-vous. Specifically, plaintiff explains that at some point she realized the purported purpose of the trip was merely a facade, and she decided not to accompany Clements to Huntsville. After her refusal to acquiesce to what she perceived to be a sexual advance, plaintiff testified that Clements was "very mean" to her. Plaintiff's deposition testimony indicates that shortly after her refusal, Clements took action that reduced plaintiff's time for a lunch break from thirty minutes to ten minutes, then admonished her not to be a minute late in returning from lunch. This appears to have occurred only once.

Because lunch and break times are terms, conditions, and/or privileges of employment, severely reducing the lunch time of an employee could be viewed as a "punishment" inflicted on that employee for not capitulating to the employer's wishes. This would be especially true if the reduction occurred soon after the employee refused to cooperate. Viewing the facts and inferences therefrom in a light most favorable to plaintiff, sufficient evidence has been set forth to establish a genuine issue with regard to adverse employment action.

11

3. <u>Damages Suffered by Plaintiff</u>

As one defense, defendants contend that Ray has not sustained damages as a result of Clements' alleged actions. Defendants explain that plaintiff's "storied past shows that she was from a 'rough' background to say the least. She is not your ordinary female worker who is threatened or intimidated by sexual advances." (Def. Brief, p. 7). After cataloguing a number of irrelevant events including a personal affront to plaintiff's mother, defendants conclude by stating "[b]eing raised by such a person would definitely cause Dana Ray to be the type individual she is and certainly not be offended by sexual advances." <u>Id.</u> Defendants then, in a display of hubris, speculate that plaintiff will use any money awarded her as a result of Clements' alleged misconduct "probably to assist her in her cocaine habit." <u>Id.</u> Defendants have filed the deposition testimony of several individuals to support their claim that plaintiff could have suffered no mental anguish. The deposition testimony contains references to plaintiff's sexual history, criminal record, and drug use and abuse. Defendants apparently view these references as "evidence" that plaintiff could not possibly have been damaged or offended by the alleged acts of Clements because she is "the type of individual she is."

Plaintiff rebuts defendants' contention that she has not been damaged by submitting her own deposition testimony indicating that she was humiliated by Clements' behavior, that Clements' behavior made her uncomfortable, that Clements' behavior became unbearable, that Clements' behavior had driven her to tears, and that Clements' behavior caused her to quit. Although plaintiff does not claim a constructive discharge, which is virtually impossible to prove, the question of whether plaintiff

12

has suffered any damage as a result of the alleged acts of ABC, committed by Clements, is obviously a heavily disputed issue of material fact not appropriate for summary judgment.

### C. *Assault and Battery*

Defendants lastly contend that they are entitled to judgment as a matter of law with respect to plaintiff's assault claim. Defendants argue that Alabama state law requires more than the plaintiff feel "uncomfortable," as she alleges in her complaint. Continuing, defendants analogize the alleged behavior in this case with a case from the Middle District of Alabama in which the plaintiff's employer played footsy with the plaintiff, rubbed her neck and shoulders, and stood too close behind her. See Morrow v. Auburn University at Montgomery, 973 F. Supp. 1392, 1409 (M.D. Ala. 1997). Defendants correctly restate the reasoning and holding of that court as follows: where there was no menacing or offensive comments, no threat of bodily harm to plaintiff, and the plaintiff did not contend that she felt imminent physical harm, conduct that the plaintiff found unwelcome or humiliating did not amount to assault or battery. Id.

In response to defendants' argument, plaintiff submits her own deposition testimony, in which she indicates, under oath, that Clements slipped his arm around her waist; repeatedly brushed his arms and/or hands up against her breasts; would pull her to him when he called her into his office; would touch, feel, or slap her behind; would come up behind her, cupping and squeezing her breasts on many occasions while she was at the counter (even in front of customers or other workers); and, on at least one occasion, stood behind her with his groin area pressed

13

against her buttocks, moving in a circular motion. In addition to evidence regarding Clements' alleged physical overtures, plaintiff's testimony also contains descriptions of numerous propositions, innuendos, and inappropriate questions. Plaintiff also submits the deposition testimony of James Williams and Terry Cromer to corroborate some of plaintiff's deposition testimony.

Based upon the evidence before the court, and viewing such evidence in favor of plaintiff, this court concludes that the factual situation is more analogous to Brassfield v. McLendon Furniture, Inc., than to Morrow. Compare 953 F. Supp. 1438, 1459 (M.D. Ala. 1996) with Morrow 973 F. Supp. at 1409. In Brassfield, the plaintiff's supervisor came up behind her, grabbed her breasts with his hands and pressed his groin area against her body. Id. This behavior occurred only once, had been preceded by oral advances and threats, and caused plaintiff to fear she might be raped. Id. The court easily found that evidence of such behavior precluded entry of summary judgment on the claim of assault and battery. Id.

This court respectfully disagrees with Morrow's apparent requirement that there be some evidence of imminent physical harm. Even among the judges of the Middle District, Morrow's requirement is not unanimously accepted. See Portera v. Winn Dixie of Montgomery, 996 F. Supp. 1418 (M.D. Ala. 1998). One recent decision explains that there is "no requirement under Alabama law that there be injury or threat of injury to constitute an assault and battery . . . the question of bodily pain is important only as affecting damages." Id. Indeed, the same court allowed a plaintiff to survive summary judgment where she alleged only that she was "shocked" and "surprised" by her supervisor touching her

14

buttocks and her breast. Id. Moreover, plaintiff in the instant case presents the deposition testimony of Terry Cromer. Cromer says that plaintiff did not want him to leave her alone with Clements, who had asked plaintiff to stay late with him. This suggests that plaintiff was at least somewhat concerned about imminent physical harm.

Based on the evidence before the court, plaintiff has demonstrated a genuine issue of material fact with regard to her claim of assault and battery against Clements, and under a *respondeat superior* theory, against ABC. Although Clements cannot be pursued under Title VII, Ray's state law claim, which arises out of the same nexus of facts, can be appended to the federal claim against ABC and survives a Rule 56 analysis.

### III. **PLAINTIFF'S MOTION TO STRIKE**

On August 24, plaintiff filed a motion to strike any evidence relating to her sexual history, criminal record, drug use and abuse as well as other evidence plaintiff characterizes as "hearsay," "irrelevant," or inaccurate. As explained in preceding sections, this court has concluded that plaintiff's sexual harassment claim survives summary judgment even if this court were to consider the contested evidence. In ruling on a motion for summary judgment a court considers only evidence presented by the moving party that would be admissible at trial. General GMC Trucks, Inc. v. Mercury Freight Lines, Inc., 704 F.2d 1237, 1238 (11th Cir. 1983); see Harris v. H & W Contracting Co., 102 F.3d 516, 521 (11th Cir. 1996), *reh'g denied,* 109 F.3d 773 (1997). After careful evaluation, this court concludes that much of the evidence filed by defendants in support of their Rule 56 motion will not be admissible at trial and will never be heard by a jury.

Specifically, evidence relating to plaintiff's criminal record will be excluded by the combined effect of FED.R.EVID. 404(b) and 403. Rule 404(b) prohibits introduction of past crimes (other than felony offenses), wrongs, or acts when used to draw an impermissible inference from those acts that the person who committed those acts is a "bad person." See Arthur Best, EVIDENCE 34 (1994). It is apparent from the defendants' motion that such an impermissible use of evidence is exactly what was intended. Further, Rule 403 excludes evidence if its probative value is substantially outweighed by the danger of, *inter alia*, unfair prejudice or confusion of the issues. This court is unable to imagine **any** connection between plaintiff's alcohol related misdemeanors, an unproven charge of assault and battery, and the type of sexual activity that might offend her. The probative value of such evidence is extremely low, if not non-existent. The introduction of such evidence, on the other hand, poses a great danger of prejudicing the fact-finder against plaintiff and of confusing the issues contested at trial.

Rule 404(b) would also exclude evidence related to plaintiff's drug problem if used to show that plaintiff is a "bad person." The fact that defendants include drug problems in the litany of events used to show that plaintiff is "the type of individual . . . not . . . offended by sexual advances" indicates that defendants are attempting to use the evidence to create an impermissible inference. For the same reasons discussed above, such evidence would run smack into the policies represented by Rules 403 and 404(b).

Rule 404(b), however, does offer a narrow opening through which defendants may be able to introduce evidence relating to plaintiff's past drug use and abuse. Rule 404(b) allows the use of character evidence

16

when not used to demonstrate a propensity for a particular characteristic. One such permissible use allows the introduction of character evidence tending to show motive. Defendants' statement in its brief in support of its motion, however trite, essentially contends that plaintiff's claim is frivolous and brought only to gain money to feed her cocaine habit. If defendants seek to introduce evidence of plaintiff's drug use for the limited purpose of showing motive to bring a frivolous lawsuit, such evidence might be admissible. Because the possibility of a permissible use exists, evidence relating to plaintiff's drug use cannot be stricken at this juncture. The admissibility issue must await trial. Defendants are on notice, however, that this court will readily sustain objection to evidence if used beyond the limited purpose discussed in this opinion.

This court finds that evidence relating to plaintiff's sexual history may or may not be admissible under Rule 412. Evidence relating such extraneous matters as the number of plaintiff's marriages, whether plaintiff has or has not had an abortion, whether she does or does not have an illegitimate child, whether she has or has not lived with a man outside of marriage, and whether she has or has not had a consensual sexual encounter with a co-worker at ABC have little, if any, probative value in determining whether plaintiff would be offended by the alleged acts of Clements. This court is compelled to conclude that defendants' attempt to put forward such evidence is an attempt to turn the court against plaintiff. The court is not only immune from such attempts but is not the judge of the facts. His job does, however, include protecting all parties at trial from poisonous and prejudicial material. The court deduces that defendants are either unaware of Rule 412, or have actively

17

chosen to ignore it. For the benefit of defendants, this court will assume the former.

## CONCLUSION

With regard to plaintiff's September 14 motion to strike evidentiary materials, the court finds no grounds for "striking" the evidence but certainly will take another look at trial, as if the motion were a motion in limine.

With regard to plaintiff's second motion to strike, deemed by the court as a motion in limine, the evidence relating to plaintiff's criminal history may very well be barred by Rules 404(b) and 403. Such evidence was not a factor in Rule 56 consideration and will probably not be received at trial. Evidence relating to plaintiff's sexual history may be barred by Rule 412 if objection to it is made at trial, but the ruling must await trial. Evidence relating to plaintiff's drug use and abuse may be used for a limited purpose only. With respect to some of plaintiff's other evidentiary objections, her objections challenge the weight of the evidence, not its admissibility. It is impossible to rule on the admissibility of all pieces of evidence in advance of trial.

With regard to defendants' motion for summary judgment, plaintiff has presented evidence sufficient to demonstrate genuine issues of material fact on the Title VII claim against ABC and on the state law claim against both defendants. Defendants' motion is therefore due to be partially granted and partially denied. An appropriate order will be entered.

DONE this 13 day of October, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE